**In re John Marshall DICKEY, Bankrupt.**

**Kenneth G. STEVENS, Plaintiff,**

**v.**

**A. W. BECK, Trustee, Defendant.**

**Bankruptcy No. 76–1934–BK–SMW–H.
Adv. No. 5.**

United States Bankruptcy Court,
S. D. Florida.

April 15, 1982.

Chad P. Pugatch, Fort Lauderdale, Fla., for defendants.

Reggie David Sanger, Fort Lauderdale, Fla., for plaintiff.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE coming on to be heard upon an Adversary Proceeding filed by Kenneth G. Stevens as Plaintiff seeking modification of the automatic stay herein against the Defendant, A. W. Beck, Trustee, as well as upon the Trustee's Counterclaim for turnover of certain stock certificates, and the Court, having heard the Testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel; and, being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

This case arises under the old Bankruptcy Act. Kenneth G. Stevens, the Plaintiff, filed his Complaint to modify the automatic stay in order to foreclose an alleged security interest in certain stock certificates which are property of the estate herein, to wit: the bankrupt's interest in certain stock certificates constituting 100% of the issued and outstanding shares of Pompano Beach Holiday Corporation. Pompano Beach Holiday Corporation is a Debtor under Chapter 11 before this Court as a result of the filing of a Chapter 11 Proceeding by A. W. Beck, Trustee as sole stockholder of Pompano Beach Holiday Corporation (Case No: 78–692–BK–SMA–H).

The creditor, Kenneth G. Stevens, claims to be a secured creditor holding a security interest in the aforesaid stock to secure indebtedness created by a promissory note dated September 17, 1975, in the original principal sum of $95,000.00 as well as a promissory note dated April 30, 1976, in the original principal sum of $14,623.30. The creditor claims a balance outstanding on said notes as of February 17, 1982, in the amount of $53,380.35.

At the time of the execution of the original promissory note, physical possession of the subject stock certificates was delivered to the Plaintiff. There was no endorsement of the certificates on the face or reverse side of the certificates themselves. However, a separate stock pledge was executed by the Bankrupt on September 17, 1975, pledging the subject stock "as collateral security" and granting to the Plaintiff the right

"... in the event of default ... to foreclose upon said security, either at private or public sale, pursuant to the laws of Florida and to otherwise issue satisfactions, releases, assignments, or other documents as may be required from time to time in the name of the assignee or assignor to fully perfect the security."

Although possession remained in the Plaintiff, a second stock pledge, containing similar language, was executed by the Bankrupt on April 30, 1976, in conjunction with the execution of the second promissory note.

The Trustee, A. W. Beck, filed his Answer, Affirmative Defenses and Counterclaim, asserting, among other defenses, laches; equity in the stock far exceeding the value of Plaintiff's claim; and the lack of perfection of Plaintiff's security interest as of the filing of the Voluntary Petition herein, which unperfected security interest would be cut off by the Trustee's avoiding

powers under § 70(c) of the Bankruptcy Act. The remaining Count of the Trustee's Counterclaim seeks turnover of the stock based upon the aforesaid lack of perfection. The Plaintiff contests the court's jurisdiction to determine the Counterclaim based upon the court's summary jurisdiction.

The court has previously ruled, in response to Plaintiff's Motion to Dismiss the Counterclaim that summary jurisdiction lies to determine these issues, in that if Plaintiff's security interest is not duly perfected, his claim would be colorable only, resulting in constructive possession in the Trustee. *Matter of Retail Stores Delivery Corporation,* 24 Am.B.R. 15, 5 Fed.Supp. 892. *2 Collier on Bankruptcy,* Para. 23.05(2), Page 474.2 (14th Ed.).

■ In considering a complaint to lift or modify the automatic stay under the old Act, it is clear that the initial burden is on the creditor to show irreparable damage before the burden will shift to the Trustee to establish grounds for the maintenance of the stay. *In re Overmeyer Company, Inc.,* 10 C.B.C. 389 (S.D.N.Y.1976). In the instant case, the evidence establishes that the creditor, who was the long standing attorney for the Bankrupt, had full knowledge of the circumstances leading up to the filing of the bankruptcy in December of 1976. He was also aware of the filing of the Chapter 11 Proceeding for Pompano Beach Holiday Corporation by the Trustee in June of 1978. Nevertheless, he has waited approximately five and one-half (5½) years to institute this proceeding to obtain relief from the automatic stay. From the evidence, it is clear that the creditor did not know if any equity existed in the stock at the time he took it as collateral. In fact, it cannot be established from the evidence presented that there was equity in the stock at that time.

The Trustee, through the filing of the Chapter 11 Proceeding and resulting litigation and sale of assets, has enhanced the value of the stock and is presently preparing to file a Chapter 11 Plan which may further enhance the value of the stock. Within a fixed period of time it will then be determined whether there is any equity in

the stock for the benefit of the creditors in this estate, secured or unsecured.

■ Based upon the foregoing, the court concludes that the creditor in the instant case has failed to meet his burden of showing irreparable damage. Further, the court is convinced that after waiting five and one-half (5½) years, and testifying that he (creditor) did not have the time to seek appropriate counsel to represent his interest herein prior to this time, the Trustee should prevail in his argument of laches and should have an opportunity to complete the Chapter 11 Proceeding which is .still pending. These defenses, in and of themselves, provide a basis for the court to deny the modification or lifting of the automatic stay herein.

However, the Trustee has further asserted, by way of Affirmative Defense and Counterclaim, the lack of perfection of the alleged security interest. While it is not necessary to reach this issue in disposing of the Complaint to modify the stay, the court must consider the arguments in view of the Trustee's Counterclaim.

■ The Trustee asserts that the lack of endorsement on the stock certificates, coupled with the collateral nature of the separate stock pledge, result in a lack of perfection by virtue of which the Trustee may cut off the creditors rights under § 70(c) of the Bankruptcy Act. Clearly, the Trustee's avoiding powers under § 70(c) are sufficient to cut off an unperfected security interest in stock and avoidance of a stock pledge. *Appeal of Copeland,* 531 F.2d 1195 (3rd Cir. 1976).

As to the issues raised herein, there is a substantial lack of decisive case law in this area and the court must thus interpret the applicable statutes, which form a portion of the Uniform Commercial Code as enacted in the State of Florida, based upon the most logical construction.

Pursuant to Florida Statutes § 671.-201(32) and (33), "Purchase" is defined to include "taking by sale, discount, negotiation, mortgage, pledge, lien . . ." and "Purchaser" is defined as "a person who takes

by purchase". Thus, one who takes by pledge, as the creditor herein, must receive endorsement of the stock certificates in order to qualify as a bonafide purchaser. Florida Statutes § 678.302. One who takes by "purchase", which includes pledge or lien, without necessary endorsements, cannot be a bonafide purchaser. Florida Statutes § 678.307. Pursuant to Florida Statutes § 678.308, endorsement may be on the face of the certificate or on a separate instrument.

■ The Trustee herein contends that the nature of the separate instrument here, to wit: the stock pledge agreements which have been introduced into evidence, do not constitute an absolute endorsement, thus making the creditors rights inferior to the Trustees under § 70(c) of the Bankruptcy Act. Based upon a review of the stock pledge agreements, the court is inclined to support the Trustee's position. A review of the stock pledge agreements reveals that the assignment is referred to as "collateral security". Further, the agreements specifically require that the creditor may only *become* fully perfected after foreclosure and sale by virtue of the following language:

> "That in the event of default, the assignee herein shall be entitled to foreclose upon said security, either at private or public sale, pursuant to the laws of Florida and to otherwise issue satisfactions, releases, assignments, or other documents as may be required from time to time in the name of the assignee or assignor to fully perfect the security."

Based upon the foregoing, the court finds in favor of Defendant and against Plaintiff on the Complaint to modify the stay, and the automatic stay herein shall remain in full force and effect until further Order of this Court. The court further finds in favor of the Defendant/Counterclaimant and against the Plaintiff/Counterdefendant on the Counterclaim for turnover herein. The Plaintiff/Counterdefendant's security interest not being duly perfected is cut off by the Trustee pursuant to § 70(c) of the Bankruptcy Act and the stock which is the subject of this action should be turned over to the Trustee. A Final Judgment will be entered in accordance with these finds and conclusions.